**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
BERNARD COOKS,


                                    Plaintiff,

                  - against -

                                                                **MEMORANDUM**
                                                                **AND ORDER**

                                                                13-3460 (LDW) (AKT)

THE TOWN OF SOUTHAMPTON,
and ERIC SICKLES, in his representative
capacity as a Police Officer of the Town of
Southampton Police Department,
                                    Defendants.
----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

        Plaintiff Bernard Cooks ("Plaintiff") brings this civil rights action pursuant to 42 U.S.C.

§ 1983 against Defendants The Town of Southampton (the "Town") and Eric Sickles ("P.O.

Sickles"), in his representative capacity as a Police Officer of the Town of Southampton Police

Department  (collectively, "Defendants") asserting claims of false arrest, false imprisonment,

malicious prosecution, and violations of his constitutional rights under the Fourth and Fourteenth

Amendments.  *See generally* Compl. [DE 1].  Presently before the Court is Plaintiff's motion to

compel the Town to produce certain internal documents from the Southampton Town Police

Department (the "STPD") in response to Plaintiff's discovery requests.  *See* Plaintiff's Letter

Motion to Compel ("Pl.'s Mot.") [DE 30].  The Town opposes the motion on the grounds that the

documents Plaintiff seeks are not relevant to his claims and are protected from disclosure under

N.Y. Civ. Rights Law § 50-a ("Civil Rights Law § 50-a") and/or the Health Insurance Portability

and Accountability Act (HIPAA), 42 U.S.C. § 1320d, *et seq.*  *See* Reply in Opposition ("Town

Opp.") [DE 32]. The Town produced the disputed documents to the Court for *in camera* review and that review has been completed. For the reasons set forth below, Plaintiff's motion to compel discovery is GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order.

## II.    BACKGROUND

The following facts are taken from the Complaint and the parties' submissions on this motion. On January 19, 2011, Plaintiff was arrested by the STPD and charged with multiple counts of Criminal Possession of a Controlled Substance and related charges. Plaintiff subsequently pleaded guilty to one count of criminal possession. According to the Complaint, on May 18, 2012, while Plaintiff was serving his sentence on the criminal possession conviction, the Suffolk County District Attorney's Office ("the DA") apprised him that an "investigating police officer was under investigation for misconduct with respect to plaintiff's arrest and prosecution." Compl. ¶ 27. That police officer was later identified as P.O. Sickles, who, at the time of Plaintiff's arrest, served on the STPD's Street Crime Unit. Shortly thereafter, Assistant District Attorney Chirstopher McPartland ("ADA McPartland") moved to dismiss the indictment and to vacate Plaintiff's conviction based on the prosecution's failure to disclose possible impeachment (*Brady*) material to Plaintiff prior to entering a guilty plea. According to ADA McPartland, he learned after Plaintiff was convicted that P.O. Sickles may have been dependent on prescription drugs at or around the time of Plaintiff's January 19, 2011 arrest. On May 23, 2012, Plaintiff's conviction was vacated and he was released from custody.

Plaintiff thereafter commenced this civil rights action against the Town and P.O. Sickles, asserting claims of false arrest, false imprisonment, malicious prosecution, and violations of his

constitutionally protected rights. *See* Compl. ¶¶ 19-53. Plaintiff also brings claims of municipal

liability against the Town pursuant to *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658

(1978), alleging, *inter alia*, that the Town maintained an unconstitutional policy of "condoning and

ignoring a pattern of law enforcement improprieties and misconduct," and by failing to properly

train and supervise its police officers. Compl. ¶¶ 37, 64.

## III. THE INSTANT MOTION

### A. Documents At Issue

Plaintiff filed the instant motion to compel the Town to produce certain documents

described in Plaintiff's third set of discovery demands. *See* Pl.'s Mot. at 1. In particular, Plaintiff

seeks documents identified during the deposition of former Town Police Chief William Wilson

("Chief Wilson") regarding internal investigations into (i) P.O. Sickles' alleged drug dependency,

and (ii) the now-defunct Street Crime Unit, which Chief Wilson closed down in 2012 upon

discovering unsecured narcotics and drug paraphernalia in the Unit's office, and upon learning that

evidence from the Unit had gone missing. *See id.*; *see also* Dep. Tr. Excerpts of Chief Wilson

("Wilson Dep."), attached as Ex. B to Pl's Mot. [DE 30-2]. The disputed documents are as

follows:

> 1. STPD Comprehensive Internal Investigative File, including all documents, statements, audio recordings, photo log and photographs, as testified to by Chief William Wilson on May 6, 2014, pp. 22-25, 38-42, 43-48.

> 2. Laboratory Analysis Request to the Suffolk County Crime Lab for the unsecured items found in the Southampton Town Police Department Street Crime Unit in February/March 2012 during the investigation under Detective Sergeant Lisa Costa, as testified to by Chief William Wilson on May 6, 2014.

> 3. Analysis and/or report received from the Suffolk County Lab on the items found in the Southampton Town Police Department

Street Crime Unit in February/March 2012 during the investigation conducted by Detective Sergeant Lisa Costa, as testified to by Chief William Wilson on May 6, 2014.

4.      Copy of the Receipt for files moved from the Southampton Town Police to the Southampton Town Hall referencing police investigative files from 1999 to 2009, as testified to by Chief William Wilson on May 6, 2014, pp.30-32.

6.      Copy of the Officer Activity Report referencing the list of cases and arrests of PO Eric Sickles generated by Lt. Pearce and given to ADA Christopher McPartland, as testified to by Chief William Wilson on May 6, 2014, pp. 54-55.

16.     All documents comprising the Southampton Town Police Department Internal Investigation File - Number 2011-10.

25.     All internal communications referring or relating to the investigation of the STPD Street Crime Unit in February/March 2012.

*See* Responses to Plaintiff's Third Request for the Production of Documents, attached as Ex. A to

Pl.'s Mem [DE 30-1].  The Town objected to the demands on the grounds that they are overbroad

and/or are not reasonably calculated to lead to admissible evidence.  *See id.*

### B.      The Parties' Contentions

Plaintiff generally asserts that the documents he seeks are "relevant to the issues in this

action" and contain "information that is reasonably calculated to lead to the discovery of

admissible evidence."  Pl.'s Mem. at 2.  To that end, Plaintiff points out that both internal

investigations at issue (i) occurred between the time Plaintiff was arrested on January 19, 2011 and

his conviction was vacated in May 23, 2012; (ii) were initiated by former Chief Wilson "following

serious concerns he had with respect to the operation of the Street Crimes Unit."  *Id.*  Plaintiff

further asserts that the documents are relevant to his *Monell* claims "as they may indicate pattern

or intent with respect to actions of the . . . Street Crime Unit."  *Id.* at 2.  According to Plaintiff,

"[a]t the heart of the matter at bar[] is the failure to preserve evidence by the Street Crime Unit, including preserving evidence secured by P.O. Sickles." *Id.* at 3. Plaintiff therefore maintains that the documents "will show a pattern of police misconduct and of a municipality that ignored the misconduct." *Id.* Finally, Plaintiff asserts that the Town has failed to assert law enforcement privilege in its objections to the disputed requests and, in any event, the Town has not shown that any of the documents are privileged. *Id.* at 2. Plaintiff also notes that, to the extent the Town seeks to withhold the police personnel files pursuant to Civil Rights Law § 50-a, the Town bears the burden of demonstrating the applicability of that protection. *Id.* at 3.

In its opposition, the Town argues that the requested documents do not fall within the scope of relevant discovery as set forth in Fed. R. Civ. P. 26(b)(1) because the information contained in the records is not reasonably calculated to lead to admissible evidence. Town Opp. at 4. According to the Town, it has already produced to Plaintiff "a substantial amount of documents regarding the Street Crimes Unit, the investigation and the individual officers' personnel files." *Id.* To the extent Plaintiff seeks additional information regarding the investigation into P.O. Sickles' alleged drug dependency, the Town points out that P.O. Sickles "did not arrest plaintiff or swear out the warrant," and that his alleged dependency on prescription drugs was discovered ten months after Plaintiff's arrest. *Id.* at 2. The Town further emphasizes that ADA McPartland, who ultimately decided to dismiss Plaintiff's indictment, did not rely on any of the documents Plaintiff seeks here to make that determination. *Id.* at 5. Rather, "the dismissal of the indictment was solely based on the failure to provide *Brady* material (Sickles' prescription drug dependency) to the criminal defendant (Cooks) before he entered his guilty plea. The decision to vacate the conviction and the indictment was not motivated by any later investigations of the Street Crimes

Unit . . . and in making his determination, McPartland did not review the involuntary statements of certain officers to the Internal Affairs Department about Officer Sickles' alleged dependency." *Id.* Finally, the Town argues that, notwithstanding the *Monell* claims asserted against it, Plaintiff is not entitled to examine records about inspections and investigations of the Street Crime Unit which were "conducted more than a year after plaintiff's claimed wrongful arrest," as such evidence would be inadmissible under Fed. R. Evid. 404(b). *Id.*

Under a heading titled "Motion for Protective Order," the Town asserts that the documents Plaintiff seeks should be protected from disclosure under Civil Rights Law § 50-a.[1] *See id.* at 5-6. In particular, the Town argues that, here, "the equities weigh against disclosure" because "[t]he probative value of the requested records is minimal." *Id.* at 6. According to the Town, "[w]hile prior complaints and disciplinary matters could be relevant in terms of notice to the Town, there is no similar probative value for subsequent disciplinary unfounded charges which do not relate to the incident in question." *Id.* Consequently, the Town asserts that "[p]roviding documentation regarding unrelated investigations and matters which occurred after the vacatur of the conviction serves no benefit to [Plaintiff], and there is a substantial probability that it will cause confusion and prejudice to the Town." *Id.*

The Town has submitted the Affidavit of Chief Robert Pearce ("Chief Pearce") to support its request for a protective order. *See* Affid. ("Pearce Affid."), attached as Ex. C to Town Opp. [DE 32-3], at ¶ 9. Chief Pearce states that his affidavit was made "under oath and penalty of perjury" to support the Town's objections to discovery demands seeking, among other things,

---

[1]    The Town notes that, although it did not raise Civil Rights Law § 50-a as an objection to the document requests at issue on this motion, the Town raised that objection in response to some of Plaintiff's prior discovery demands, which according to the Town, essentially sought the same documents at issue on this motion. *See* Town Opp. at 2-3. Thus, to the extent the Court deems it necessary, the Town asks to amend its responses "to re-state the law enforcement § 50-a privilege in respect to the Third Document Demands at issue herein." *Id.* at 3.

"summaries of interviews and investigations for the Street Crimes Unit and/or its officers which occurred <u>after</u> the date of plaintiff's January 19, 2011 arrest." *Id.* ¶ 2 (emphasis in original). Pearce asserts that, based on his "understanding of this case and knowledge of the investigations at issue," Plaintiff's requests "seek information about things which occurred 10 months and 16 months after the plaintiff's arrest." *Id.* ¶ 3. According to Pearce, allegations related to P.O. Sickles' prescription drug dependency "were first made known to the department in or around late October 2011, more than ten months after the plaintiff's arrest, and after such time as plaintiff had already pled guilty to the charges against him." *Id.* ¶ 4. Pearce avers that, once he was made aware of the allegations on October 26, 2011, he "immediately commenced an internal investigation into the situation which included the assignment of an 'internal affairs number.'" *Id.* ¶ 5. Thereafter, the Suffolk County Police Department's Internal Affairs Unit ("IAU") conducted investigations, which included interviews of at least seven Town Police officers, while the DA "investigated more than one hundred convictions where Officer Sickles was an arresting officer to ensure that there were no improprieties involved." *Id*. ¶ 7. According to Pearce:

> The records regarding the above referenced disciplinary investigation and charges have always been kept confidential. The files were first maintained at headquarters, then at the Suffolk County District Attorney's office, next to the Town's Human Resources Department, and finally in the Town Clerk's internal vault. They are not publicly available and have not been disclosed within the department. I have no knowledge of how some of these documents have been made available to Newsday or other media sources, but attest that they were not publicized by the Town of Southampton.

*Id.* ¶ 8.

Upon receipt of the parties' submissions on this motion, the Court directed the Town to provide the Court with all disputed documents for *in camera* review as well as a privilege log. *See*

Elec Order, June 30, 2014. According to the privilege log, the Town asserts that several documents are protected from disclosure by Civil Rights Law § 50-a and/or HIPAA.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Relevance Under Fed. R. Civ. P. 26(b)

Rule 26 of the Federal Rules of Civil Procedure provides for the discovery of relevant, non-privileged information which "appears reasonably calculated to lead to the discovery of admissible evidence." F. R. Civ. P. 26(b). "'Relevance' under Rule 26 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (noting that the scope of discovery under Rule 26(b) is "very broad"); *Greene v. City of New York*, No. 08 Civ. 243, 2012 WL 5932676, at *3 (E.D.N.Y. Nov. 27, 2012) (citing *Crosby v. City of New York*, 269 F.R.D. 267, 282 (S.D.N.Y. 2010) (explaining that Rule 26 must be construed broadly to include any matter that has, or could reasonably have, bearing on any issue that is, or may be, in the case); *Barrett v. City of New York*, 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (noting that the information sought "need not be admissible at trial to be discoverable.").

Notwithstanding the foregoing principles, however, "[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (citing *Wells Fargo Bank, N.A. v. Konover,* No. 05 Civ. 1924, 2009 WL 585430, at *5 (D. Conn. Mar. 4, 2009); *Evans v. Calise,* No. 92 Civ. 8430, 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994)). In general, "[a] district court has broad latitude to determine the scope of discovery and to

manage the discovery process." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 207 (2d Cir.

2012) (citing *In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008)); *Barbara*,

2013 WL 1952308, at *3 ("Courts afford broad discretion in magistrates' resolution of discovery

disputes.").

###    B.    Protective Order

A district court has "broad discretion to determine whether an order should be entered

protecting a party from disclosure of information claimed to be privileged or confidential."

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981); *Coggins v. Cnty. of*

*Nassau*, No. 07 Civ. 3624, 2014 WL 495646, at *2 (E.D.N.Y.  Feb. 6, 2014); *AMW Materials*

*Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) ("While the Federal Rules

mandate a liberal standard, district courts are empowered to issue protective orders to temper the

scope of discovery under [Rule 26(c) ].").  Under Rule 26(c), "a court may, for good cause, issue

an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden

or expense."  Fed. R. Civ. P. 26(c).  This equitable power includes prohibiting the disclosure of

certain materials.  *See* Fed. R. Civ. P. 26(c)(A).  "The unique character of the discovery process

requires that the trial court have substantial latitude to fashion protective orders."  *Seattle Times*

*Co. v. Rhinehart*, 467 U.S. 20, 26, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); *see also In re Zyprexa*

*Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) ("Much of the material produced in

discovery is neither incorporated in motions made to the court nor admissible at trial. In order to

mitigate the substantial risk of litigants' privacy and other rights posed by the expansive scope of

pretrial discovery, courts are given broad discretion in Rule 26(c) to craft sealing orders").

Because protective orders can implicate the public's First Amendment and common law right of

access to the courts, however, Rule 26(c) requires the party seeking the order to demonstrate good cause. *See In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 221 (S.D.N.Y.2006).

Under Rule 26(c), the moving party must establish "particular and specific facts" rather than "conclusory assertions," that justify the imposition of a protective order. *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005) (quoting *AMW Materials*, 215 F.R.D. at 72); *see also Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 143 (S.D.N.Y. 1997) ("Under Rule 26(c), the moving party is required to establish good cause by a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements . . . . Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (citations and quotations omitted)). "[I]f the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y. 1999) (collecting cases). Such countervailing interests include the public's interest in the information contained in the documents. *See, e.g., Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 505 (E.D.N.Y. 1999); *In re Zyprexa Injunction*, 474 F. Supp. 2d at 415 ("Balancing requires taking into account litigants' privacy rights as well as the general public's interest in the information.").

### C.   Civil Rights Law § 50–a

Civil Rights Law § 50–a provides that

> [a]ll personnel records, used to evaluate performance toward continued employment or promotion, under the control of any police agency . . . shall be considered confidential and not subject to inspection or review without the express written consent of such police officer ... except as may be mandated by lawful court order.

"Section 50–a is most often invoked by defendants in 'non-criminal civil rights litigation who seek to prevent disclosure of state officers' personnel files.'" *United States v. Collier*, No. 10-CR-820, 2013 WL 125691, at *1 (E.D.N.Y. Jan. 9, 2013) (quoting *United States v. Nogbou*, No. 07–CR– 814, 2007 WL 4165683, at *5 (S.D.N.Y. Nov.19, 2007)).

In federal civil rights cases, federal law, not state law, governs issues of privilege. *See King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). "Although 'federal common law provides for some consideration of state law privileges,' the protections of Section 50–a 'do not govern discovery in federal cases.'" *Collier*, 2013 WL 125691, at *1 (quoting *Mercado v. Div. of N.Y. State Police*, 989 F. Supp. 521, 522 (S.D.N.Y. 1998)) (alteration omitted); *see Smith v. Cnty. of Nassau*, No. CV 10-4874, 2013 WL 3893380, at *2 (E.D.N.Y. July 24, 2013) ("Under federal law, there is no confidentiality privilege afforded to police records as there is under New York Civil Rights Law § 50–a.") (citing *King*, 121 F.R.D. at 187). "In fact, 'in the context of a civil rights action asserted against police officers, no federal rule prohibits discovery of police personnel documents.'" *Smith*, 2013 WL 3893380, at *2 (quoting *McKenna v. Inc. Vill. of Northport*, 06 CV 2895, 2007 WL 2071603, at *7, (E.D.N.Y. Jul. 13, 2007)).

"However, 'the nonexistence of a federal law in this area does not give license for free and unfettered discovery of police personnel documents.'" *Dorsett v. Cnty. of Nassau*, 762 F. Supp. 2d 500, 531 (E.D.N.Y.) *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011) *aff'd sub nom. Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013) (quoting *Cody v. N.Y.S. Div. of State Police*, No. CV 07–3735, 2008 WL 3252081, at *2 (E.D.N.Y. July 31, 2008)). Rather, a court "must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation." *King*, 121 F.R.D. at 187; *see Smith*, 2013 WL 3893380, at *2; *Dorsett*, 762 F. Supp. 2d at 531.

To effectively balance these interests, courts apply the two-prong test established in *King v. Conde*. *See, e.g.*, *Coggins*, 2014 WL 495646, at *2; *Smith*, 2013 WL 3893380, at *2; *Dorsett*, 762 F. Supp. 2d at 532. "Under the first prong of the *King* test, the police bear the burden of making a 'substantial threshold showing' that harm is likely to occur as a result of disclosure of the requested documents." *Dorsett*, 762 F. Supp. 2d at 532; *see King*, 121 F.R.D. at 189 (internal quotation marks omitted). "Unless the government, through competent declarations, shows the court what interests of law enforcement or privacy would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis." *Id.* (quoting *King*, 121 F.R.D. at 189) (internal quotations and alterations omitted) (emphasis in original). "The declaration or affidavit submitted must (1) be under oath and penalty of perjury; (2) from a responsible official within the agency who has personal knowledge of the principal matters to be attested to; and (3) upon personal review of the documents." *Id.* "Only upon satisfying this initial threshold showing will a Court turn to the next prong and weigh the factors in favor of and against disclosure." *Id.* (citing *Cody*, 2008 WL 3252081, at *3; *McKenna*, 2007 WL 2071603, at *7). "Where defendants have not satisfied their burden of justifying the application of any privilege, the Court will not shield the requested documents and information from disclosure based on Section 50–a or any other privilege." *Smith*, 2013 WL 3893380, at *2 (internal quotation marks omitted).

**D.  HIPAA**

"HIPAA was enacted by Congress 'to ensure the confidentiality of protected health information maintained by covered entities.'" *Nat'l Ass'n of Letter Carriers, AFL-CIO v. U.S. Postal Serv.*, 604 F. Supp. 2d 665, 671 (S.D.N.Y. 2009) (quoting *Gratton v. United Parcel Serv.*,

*Inc.*, No. CV 07-3071, 2008 WL 4934056, at *4 (E.D.N.Y. Nov. 14, 2008)). HIPAA's Privacy

Regulations, 45 C.F.R. Parts 160 and 164, authorize use and disclosure of protected health

information "without the written authorization of the individual . . . or the opportunity for the

individual to agree or object" only under specific circumstances. 45 C.F.R. § 164.512. In

particular, 45 C.F.R. §164.512(e)(1) (i), entitled "Disclosures for judicial and administrative

proceedings," provides that "[a] covered entity may disclose protected health information in the

course of any judicial or administrative proceeding: (i) In response to an order of a court or

administrative tribunal, provided that the covered entity discloses only the protected health

information expressly authorized by such order . . . ." In other words, "'under HIPAA and the

regulations promulgated thereunder, disclosure of patient records in legal proceedings is permitted

if ordered by the court.'" *Patrick v. Bronx Care*, No. 14-CV-7392, 2014 WL 7476972, at *2

(E.D.N.Y. Dec. 31, 2014) (quoting *Jacobs v. Conn. Cmty. Tech. Coll.*, 258 F.R.D. 192, 197 (D.

Conn. 2009)) (citing 45 C.F.R. § 164.512(e)(1)) (alterations omitted).

     With these principles in mind, the Court now turns to an analysis of the parties' arguments

concerning the disputed police documents.

## V.  DISCUSSION

### A.  Relevance

     As a preliminary matter, the Court concludes that Plaintiff's document requests are

overbroad in terms of the time frame sought. In particular, Plaintiff has not met his burden of

making a prima facie showing that information regarding alleged misconduct by P.O. Sickles and

the Street Crime Unit, which occurred ***after*** Plaintiff's arrest on January 19, 2011, is relevant to his

claims in this action. "The locus of the line between discovery reasonably calculated to lead to

admissible evidence and the proverbial fishing expedition is determined in large measure by the allegations of the pleading." *287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976, 2012 WL 1899222, at *5 (E.D.N.Y. May 24, 2012) (quoting *Unger v. Cohen*, 125 F.R.D. 67, 71 (S.D.N.Y. 1989)). Here, Plaintiff alleges, *inter alia*, that the Town's policy of failing to supervise its officers and ignoring police misconduct led to the deprivation of his constitutional rights. *See* Compl. ¶¶ 37, 64. Plaintiff simply has not shown how information about alleged improprieties which occurred after his arrest are probative of the Town's policies and practices which were in place at the time of his arrest. Accordingly, the Court concludes that Plaintiff is not entitled to examine records which concern P.O. Sickles' alleged drug dependency after January 19, 2011. Nor is the Town compelled to disclose information concerning the condition of the Street Crime Unit when it was investigated more than a year after Plaintiff's arrest.

However, the Court concludes that, to the extent Plaintiff seeks information about alleged misconduct by P.O. Sickles and the Street Crime Unit which occurred **up to and at the time of** Plaintiff's arrest on January 19, 2011, such information is relevant to Plaintiff's claims. There is no dispute here that (i) P.O. Sickles was an investigating officer concerning the drug possession and related charges brought against him; (ii) at the time of Plaintiff's arrest, P.O. Sickles was a member of the Street Crime Unit; (iii) subsequent to Plaintiff's guilty plea and conviction, the STPD learned that P.O. Sickles may have been dependent on prescription drugs at the time he participated in the investigation of Plaintiff which led to his arrest; and (iv) based on the prosecution's failure to disclose Sickles' alleged drug dependency prior to the entry of Plaintiff's guilty plea, the DA moved to dismiss the indictment and vacate Plaintiff's conviction on May 23, 2012. In light of these undisputed facts, the Court finds Plaintiff is entitled to discover information

which goes to the issue of whether P.O. Sickles did, in fact, suffer from prescription drug dependency prior to or at the time of Plaintiff's arrest, and whether the STPD was aware of Sickles' dependency problems at that time. Such information is clearly relevant to Plaintiff's unlawful arrest claims as well as his *Monell* claims against the Town for failure to supervise and for ignoring police misconduct. Similarly, information about alleged misconduct by the Street Crime Unit which occurred before Plaintiff's arrest has a potential to lead to admissible evidence.

In arguing that the documents are irrelevant, the Town focuses on certain discrete facts, none of which the Court finds persuasive. First, the Town notes that P.O. Sickles did not arrest Plaintiff or apply for the search warrant underlying his arrest. However, as the Town states in its opposition, Plaintiff's conviction was vacated because ADA McPartland determined that P.O. Sickles' involvement in Plaintiff's arrest was "more than 'de minimis'" given that Sickles "signed at least one of the criminal informations." Town Opp. at 4. Thus, the Town cannot now claim that P.O. Sickles' role in Plaintiff's arrest was not important enough to warrant discovery regarding Sickles' alleged drug abuse at the time of the arrest. Second, the Town emphasizes that the internal investigations into Sickles and the Street Crime Unit were not initiated until well after Plaintiff's arrest. However, the Court does not find the timing of the investigations as important as whether the investigations revealed information that falls into the relevant time period, *i.e.*, up to and including the date of Plaintiff's arrest. In other words, just because the investigation occurred after Plaintiff's arrest does not mean the information uncovered by the investigation into what led up to the arrest is not discoverable. The Court is not convinced that such potentially relevant information should be withheld from Plaintiff simply because it was uncovered during investigations which occurred after the arrest. Third, the Town asserts that ADA McPartland did

not rely on any of the disputed documents in deciding to move to vacate Plaintiff's conviction. This factor does not, however, diminish the importance of P.O. Sickles' alleged drug dependency in ADA McPartland's decision to vacate Plaintiff's conviction. The Court thus determines that Plaintiff should not be foreclosed from reviewing relevant information in the subject documents simply because ADA McPartland may have gleaned this information from different sources. Finally, the Town notes that ADA McPartland found "no proof or statement offered that showed that Sickles was in fact under the influence of or addicted to prescription drugs at the time of Cooks' arrest." Town Opp. at 4. But as just discussed, according to the Town, ADA McPartland did not review the documents at issue on this motion. Thus, although ADA McPartland found no proof of P.O. Sickles' drug dependency from the evidence that *he* reviewed, it is possible that relevant information is nonetheless contained in the documents at issue here.

The Court concludes that Plaintiff has met his burden of making a *prima facie* showing that the discovery sought is relevant to the extent that the documents contain information concerning P.O. Sickles' drug dependency and the conduct of the Street Crime Unit prior to and including January 19, 2011. The Court will now consider whether the Town has met its burden of showing that relevant documents should nevertheless be protected from disclosure.

### B.      Motion for a Protective Order

At the outset, the Court notes that it is somewhat unclear from the Town's submissions whether it is seeking a protective order from the Court pursuant to Rule 26(c). Although the Town titles a section of its opposition "Motion for Protective Order," it does not cite Rule 26(c) or mention the "good cause" standard applied under that Rule. *See* Town Opp. at 5-6. Rather, the Town argues that the confidentiality provisions of Civil Rights Law § 50-a should protect the

documents from disclosure.  *See id.*  The Town also mentions HIPAA as grounds for non-disclosure in its privilege log.

In any event, assuming the Town is seeking a protective order, the Court finds that the Town has not made a sufficient showing of "good cause" to warrant restricting access to the documents.  In particular, Chief Pearce's statement that the documents at issue "are not publicly available and have not been disclosed within the department," Pearce Affid. ¶ 8, does not constitute an adequate "good cause" showing.  To the extent the Town "generally relies on conclusory assertions that a protective order is necessary," that is also "insufficient" under Rule 26(c).  *Coggins*, 2014 WL 495646, at *3.  Accordingly, the Town motion for a protective order is DENIED.

### C.      Applicability of Civil Rights Law § 50-a

Moreover, the Town has not shown that the disputed documents fall within the confidentiality provisions of § 50–a.  Significantly, the Town has not satisfied the substantial threshold showing required under *King* "that harm is likely to occur as a result of disclosure of the requested documents."  *Dorsett*, 762 F. Supp. 2d at 532.  As noted earlier, the Town has submitted the Affidavit of Chief Pearce, which was made "under oath and penalty of perjury" as required by *King*.  *See id.*  However, Chief Pearce's Affidavit does not satisfy other elements necessary to make a threshold showing.  "For example, under the *King* analysis, the affiant must make his representations upon personal review of the documents at issue."  *Dorsett*, 762 F. Supp. 2d at 533.  Here, there is no representation in Chief Pearce's affidavit that he personally reviewed the disputed documents and "[t]he Court is left to infer that such is the case."  *Id.*  More significant, however, is that Chief Pearce "fails to specify what, if any, interests would be harmed by disclosure and how

disclosure with a protective order would cause such harm." *Smith*, 2013 WL 3893380, at \*2. Although Chief Pearce notes in his Affidavit that the records concerning the disciplinary investigation of P.O. Sickles "have always been kept confidential," Pearce Affid. ¶ 8, this representation is insufficient as "[a] police defendant asserting a claim of privilege against disclosure of police materials under § 50–a 'must do more than alert the court to the state privilege law or the generalized policies which support it,'" *Dorsett*, 762 F. Supp. 2d at 531 (quoting *King*, 121 F.R.D. at 189). Thus, the Court finds that the Town has not satisfied the substantial threshold showing required under *King* which would bring the disputed police documents within the confidentiality provisions of § 50–a. *See id.* at 533.

### D.     Applicability of HIPAA

Finally, the Town asserts in its privilege log that certain documents are protected from disclosure under HIPAA. The Court assumes that the Town has asserted this "privilege" to prevent disclosure of documents which contain P.O. Sickles' medical information. The Court understands that the Town is reluctant to turn over documents which reveal sensitive medical information about Sickles' drug dependency issues. However, HIPAA permits medical records to be released in legal proceedings if ordered by the court. *See Patrick*, 2014 WL 7476972, at \*2. Moreover, to the extent that the Town asserts it "should not be required to disclose these documents and information based on the confidentiality of the information, including privacy regulations issued under HIPAA," this argument is not a persuasive basis for refusing production because, at a minimum, "the parties are free to enter into confidentiality agreements preventing disclosure outside the litigation context." *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005) (citing *In re Agent Orange*, 821 F.2d at 144–45

(2d Cir. 1987)). Here, the parties have entered into a Confidentiality Stipulation and Order, *see* Elec. Order, Oct. 31, 2013, which provides, *inter alia*, that "the most sensitive business, health or financial information" exchanged by the parties may be designated as "Attorney's Eyes Only." DE 16 at ¶ 7. The Court finds that these protocols are sufficient to safeguard any medical information contained in documents designated for disclosure.

For the foregoing reasons, the Court concludes that the Town has not met its burden of showing that the disputed police documents should be withheld from disclosure. Having reviewed the documents *in camera*, the Court determines that any confidentiality concerns may be addressed by designating certain documents "Attorneys Eyes Only" pursuant to the Confidentiality Order in place in this case and limiting disclosure to only the parties' respective counsel. The Court will now explain which of the disputed documents must be disclosed pursuant to this Order.

VI.     DISCLOSURE OF THE DISPUTED DOCUMENTS

A.     **Document Req. No. 1: STPD's Comprehensive Internal Investigative File**

In providing these documents to the Court for *in camera* review, the Town separated the documents into three general categories: (i) The Town's internal investigation into P.O. Sickles' prescription drug dependency; (ii) summaries and transcripts of interviews conducted by the Suffolk County Internal Affairs Bureau (IAB); and (iii) photographs and documents related to the June 2012 investigation of the Street Crimes Unit.

*1.     STPD's Internal Investigation into P.O. Sickles' Drug Dependency*

Having reviewed these internal records, the Court concludes that most of the documents are not relevant to Plaintiff's claims because they concern the investigation into conduct which

occurred *after* the date of Plaintiff's arrest on January 19, 2011. Therefore, the Court will not require production of these records with the following exceptions:

- Handwritten Supplementary Report of Eric Sickles, dated February 10, 2012 (two pages) (redact all information after the first five sentences)

- Typed Supplementary Report of Sgt. Lisa Costa, dated February 13, 2012 (one page) (produce first and second paragraphs; produce first sentence of paragraph three and redact the rest of the paragraph; produce the first two sentences of paragraph four and redact the rest of the paragraph; redacts paragraphs five and six)

- Status Summary Report re: Eric Sickles, dated February 10, 2012 (two pages) (re: Patrol time and Street Crime Unit time off)

For reasons previously explained, the Court finds that Civil Rights Law § 50–a and HIPAA do not apply to prevent these documents from being disclosed. To the extent that the Town has already produced to Plaintiff the supplementary reports by Eric Sickles and Lisa Costa, as it states in its cover letter included with the *in camera* documents, the Court will not require the Town to produce those documents a second time.

### 2. Summaries and Transcripts of IAB Interviews

Having reviewed the summaries and transcript of the IAB interviews, the Court concludes that most of the documents are not relevant because they concern an investigation into conduct which occurred *after* the date of Plaintiff's arrest on January 19, 2011. However, the Court finds that the following documents contain relevant information and must be produced:

- Interview Notes, Lt. Kiernan STPD IAB Interview (three pages) (produce only bullet points 1-7; redact remainder of the document)

- Interview Notes: P.O. Sickles, STPD IAB Interview (two pages) (produce only bullet points 2-11; redact remainder of the document)

- Transcript of 3-13-12 IAB Interview of Officer Kevin Gwynn (produce only page 33, line 12 – page 34, line 22)

- Transcript of 3-29-12 IAB Interview of James Kiernan (produce only page 5, line 3 – page 7, line 6; page 8, line 5 – page 9, line 2)

- Transcript of 3-29-12 IAB Interview of Captain Pearce (produce only page 35, line 22—page 36, line 16)

- Transcript of 3-14-12 IAB Interview of Sergeant Susan Ralph (produce only page 9, line 12 – page 11, line 20)

- Transcript of 3-15-12 IAB Interview of P.O. Sickles (produce only page 5, line 1 – page 24, line 24; and page 29, line 12 – page 30, line 23)

   3.  ***Photographs and Documents Related to the June 2012 Investigation of the Street Crimes Unit***

Having reviewed these documents, the Court concludes that they are not relevant to Plaintiff's claims because they concern an investigation into conduct which occurred ***after*** the date of Plaintiff's arrest in January 2011.  Accordingly, the Town need not disclose these documents to Plaintiff.

**B.  Document Req. No. 2: Laboratory Analysis Request to the Suffolk County Crime Lab for the Unsecured Items Found in the Street Crime Unit**

This June 2012 document is part of a later separate investigation conducted by Detective Sergeant Lisa Costa after Plaintiff's conviction had been vacated.  The document is essentially an inventory of materials found in the Street Crimes Office on a specific day and reflects only materials recovered that day (without any reference to the time frame prior to or at the time of Plaintiff's arrest).  The document does not speak to what was or may have been in the Street Crimes Office in December 2010 or January 2011, the relevant timeframe here.  There is no indication how long the materials were present in that office, nor is there any indication of who had accessed to the office.  For these reasons, the Court will not require production of the document.

**C.     Document Req. No. 3: Analysis/Report Received from the Suffolk County Lab on the Items Found in the Street Crime Unit**

This document is a report of the chemical analysis of what was found in the Street Crimes Office referenced in paragraph "B" above.  The document identifies the substances collected from the Office - - for this reason, the rationale which applies to the document in paragraph "B" applies equally here. There are references to plastic bags, commercially marked tablets, blister packs, glass vials him, etc. followed by the chemical analysis of the contents of those bags.  Some of the materials revealed the presence of marijuana, cocaine, acetaminophen, while others failed to reveal the presence of any controlled substance.  This document is not "proof" of anything and is not reflective of any particular timeframe here.  The relevance of this information is remote at best. Therefore, the Court will not require the Town to produce this document.

**D.     Document Req. No. 4: Copy of the Receipt for Files Moved from the Southampton Town Police to the Southampton Town Hall Referencing Police Investigative Files from 1999 to 2009**

To the extent that this document assists in establishing a particular timeframe for Plaintiff's counsel, the Court finds nothing "privileged" about this document (although the relevance seems marginal) and will require the Town to produce it.

**E.     Document Req. No. 6: Copy of the Officer Activity Report Referencing the List of Cases and Arrests of P.O. Eric Sickles Generated by Lt. Pearce and Given to ADA Christopher McPartland**

According to the Defendants' counsel, Lt. Pearce (now Chief) did not keep a copy of the list of cases and arrests effectuated by Police Officer Sickles.  Further, Chief Pearce believes that the original has not been returned from the Suffolk County District Attorney's Office.  The email which is provided here discusses how the search for Officer Sickles' cases and arrests was

conducted. However, because the email also contains names of confidential informants, the Court

will not require Defendants to produce the email.  Notwithstanding that fact, the Town is directed

to produce the following page which is the "Arrest Log Report" for Officer the Sickles for the

period running from January 1, 2010 through December 3, 2011.  Defendants' counsel is also

directed to produce to Plaintiff's counsel the subsequent pages reflecting the arrests made by

Officer Sickles between January 29, 2010 and January 19, 2011 (10 pages, plus one entry at the

top of page 11). Defendants' counsel is directed to redact all of the subsequent arrests through

page 18.

>
> **F.**      **Document Req. No. 16: Southampton Town Police Department Internal Investigation File - Number 2011-10.**

The Town asserts that documents responsive to this request are the same as those produced

in reference to Document Request No. 1 regarding the Town's internal investigation into P.O.

Sickles' prescription drug dependency.  Accordingly, the Town must produce the relevant

documents in accordance with the Court's previous directives set forth above.

>
> **G**.      **Document Req. No. 25:. Internal Communications Relating to the Investigation of the Southampton Town Police Street Crime Unit in February/March 2012**

Having reviewed the documents responsive to this request, the Court concludes that they

are not relevant to Plaintiff's claims because they concern an investigation into conduct which

occurred *after* the date of Plaintiff's arrest in January 2011.  Accordingly, the Town not need

disclose these documents to Plaintiff.

**VI.** <u>C**ONCLUSION**</u>

For the foregoing reasons, Plaintiff's motion to compel discovery is hereby GRANTED, in part, and DENIED, in part, to the extent set forth in this Memorandum and Order. The Town is directed to produce the documents set forth in this Order to Plaintiff's counsel within 14 days.

**SO ORDERED.**

Dated: Central Islip, New York
   March 31, 2015

        <u>/s/ A. Kathleen Tomlinson</u>
        A. KATHLEEN TOMLINSON
        U.S. Magistrate Judge